

Signed and Filed: May 08, 2009

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No. 08-32220 TEC |
| | ) | |
| CMR MORTGAGE FUND, LLC, a | ) | Chapter 11 |
| California limited liability | ) | |
| company, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CMR MORTGAGE FUND, LLC, a | ) | Adv. Proc. No. 08-3148-TC |
| California limited liability | ) | |
| company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CANPARTNERS REALTY HOLDING | ) | |
| COMPANY IV LLC, a Delaware | ) | |
| limited liability company; SCD | ) | |
| KUNIA, LLC, a Hawaii limited | ) | |
| liability company; and STANFORD | ) | |
| CARR, an individual, and DOES 1 | ) | |
| through 20, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM DECISION RE CANPARTNERS REALTY HOLDING CO. IV LLC'S
MOTION TO DISMISS**

Upon due consideration, and for the reasons stated below, the

motion to dismiss filed by Canpartners Realty Holding Co. IV LLC is

-1-

1 granted with leave to amend as to all claims except the claim for
2 declaratory relief, which is dismissed without leave to amend.
3 **FACTS**

4     This dispute arises out of a $97,000,000 loan to Halekua
5 Development Corporation ("HDC"). Defendant Canpartners Realty
6 Holding Co. IV LLC ("Canyon") and Plaintiff CMR Mortgage Fund, LLC
7 ("CMR") funded HDC's acquisition and development of Hawaiian real
8 property. Compl., ¶ 12. This transaction was memorialized by,
9 *inter alia*, the following agreements.

10 **A.**    **The Credit Agreement**

11     On March 12, 2007, Canyon, CMR, and HDC executed the Credit
12 Agreement, pursuant to which CMR loaned HDC $42,900,000 and Canyon
13 loaned HDC $55,000,000 (collectively, the "Loan"). The Property was
14 immediately transferred to a subsidiary of HDC, Halekua-Kunia, LLC
15 (HK LLC), which assumed the Loan. (HK LLC and HDC are collectively
16 referred to herein as "HDC"). HDC used the Loan to acquire 161
17 acres of real property in Hawaii (the "Property"). Compl., ¶ 12.
18 Canyon holds the "A Note"; CMR holds the "B Note". The A Note and
19 the B Note (collectively, the Notes) are secured by the Property,
20 all of the membership interests of HK LLC, and other personal
21 property, including funds held in certain reserve accounts. Credit
22 Agmt., §§ 6, 7.

23     Under the terms of the Credit Agreement, a portion of the Loan
24 funds were used to set up reserve accounts, including a $6,000,000
25 account established to pay a third party to provide fill material.
26 Compl., ¶¶ 13, 25. If an Event of Default occurred under the Credit
27 Agreement, Lender[1] "in its sole and absolute discretion, may use the
28

---

[1] Defined as CMR or Canyon. Credit Agmt., § 1.1.

Reserves . . . for any purpose", including application of the reserve in connection with the exercise of Lender's remedies under the Credit Agreement.  Credit Agmt., §§ 6.1.2; 12.2.4.

The Credit Agreement required HDC to repay Canyon the full principal and outstanding interest on the A Note on March 12, 2008. Id., § 3.1.  HDC did not make that payment.

**B.    The Co-Lender Agreement**

On March 12, 2007, CMR and Canyon entered into a co-lender agreement (the "Co-Lender Agreement" or "CLA").  CMR's rights under its B Note are expressly subordinate to Canyon's rights under the A Note.  CLA, §§ 6, 7, 9.  The Co-Lender Agreement provides that CMR is responsible for funding future advances, and that Canyon is to administer the Loan.  Id., §§ 4, 5.

Section 4(a) of the Co-Lender Agreement provides that Canyon shall administer the Loan as agent for CMR and Canyon, subject to "Accepted Servicing Practices", defined as

> the servicing and administration of the Loan in accordance with applicable law, the terms of this Agreement and the Loan Documents, and, to the extent consistent with the foregoing, further as follows: (1) with the same care, skill, and diligence as is normal and usual in A Note Holder's general commercial mortgage servicing with respect to mortgage loans that are comparable to the Loan; (ii) with a view toward preserving and protecting the Loan and the Collateral; and (iii) without regard to any other relationship that A Note Holder or any Affiliate thereof may have with Borrower.

CLA, § 1(a)(xii).

The Co-Lender Agreement provides as follows regarding CMR's exercise of remedies upon HDC.

> Subject to section 9(d) below, if a Continuing Event of Default occurs under the Loan which has not been timely cured. . . including . . . any Event of Default arising from the maturity of the A Loan, A Note Holder and B Note Holder hereby agree to use reasonable efforts to reach an agreement with each other on an appropriate manner for responding to such Continuing Event of Default. . . . **If A**

Case: 08-03148    Doc# 38    Filed: 05/08/09    Entered: 05/08/09 16:07:58    Page 3 of 26

**Note Holder and B Note Holder cannot reach an agreement within ten (10) days following the expiration of the applicable cure period . . . . A Note Holder may initiate foreclosure proceedings or any other Enforcement Action. . .** Notwithstanding anything contained herein to the contrary . . . [and subject to B Note Holder's cure rights], A Note Holder shall be entitled to commence an Enforcement Action at any time without the consent of B Note Holder if A Note Holder reasonably determines that the commencement of an Enforcement Action is necessary to preserve the Collateral after consultation with B Note Holder.

Id., § 9(a)(emphasis added).  In addition, Canyon has the right to initiate an enforcement action when an Event of Default exists at any time during which there is an "Equity Control Condition."  Id., § 9(d).

In the event of an uncured Continuing Event of Default, Canyon may: (1) take possession of any of the reserves, including the Fill Reserve; and (2) institute foreclosure proceedings as an "Enforcement Action".  Credit Agmt., §§ 6.1.2, 6.8, 12.2.4.

Before the completion of a foreclosure sale, CMR has the option: (a) to take title to the Property; or (b) to purchase the A Note.  CLA, § 9(b).  If CMR does not exercise either of these options, *and* Canyon is the winning bidder at any foreclosure sale,

then transfer of title to Premises or the Pledged Interests shall be in the name of [Canyon] . . . and **[CMR] shall have no further rights or interests in the Loan**, (ii) all subsequent Loan Recoveries shall belong to A Note Holder; and (iii) except for the indemnification obligations of [CMR] and [Canyon], this Agreement shall terminate.

Id., § 9(b)(emphasis added).

The Co-Lender Agreement contains the following choice of law provision.

In all respects, including, without limitation, matters of construction and performance of this Agreement and the obligations arising hereunder, this Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

- 4 -

1 CLA, § 23.

2 **C.  <u>The Pre-Negotiation Agreement</u>**

3     On May 1, 2008, approximately six weeks after HDC failed to pay
4 the A Note upon its due date, Canyon, CMR, and HDC executed the Pre-
5 Negotiation Agreement.  The Pre-Negotiation Agreement recites that
6 the Loan maturity date under the Credit Agreement occurred on March
7 12, 2008, and that the conditions to exercise the option to extend
8 the maturity date were not satisfied.  Recital D.  The Pre-
9 Negotiation Agreement recites that Canyon received $1,375,000 from
10 CMR, and requires Canyon to apply this sum in accordance with the
11 Loan Documents and the Co-Lender Agreement.  Recital G.

12     The Pre-Negotiation Agreement defines CMR as both a "Lender"
13 and a "Borrower Party."  Preamble.

14     Section 4 of the Pre-Negotiation Agreement preserves Canyon's
15 right to take enforcement action by providing that Canyon's
16 participation in the negotiations "shall not constitute or evidence
17 any waiver, estoppel, release, modification, limitation or
18 forbearance, or any agreement by either Lender to delay the exercise
19 of either Lender's rights or remedies. . . ."

20     Section 6 of the Pre-Negotiation Agreement provides that the
21 Borrower Parties "irrevocably release" any existing claims or
22 defenses

23         arising out of the Loan, the Loan Documents, the Co-Lender
            Agreement, the Collateral or the Property, or any past
24         relationship between or among Borrower Parties [or] Canyon
            . . . that can be asserted . . . either to reduce or
25         eliminate . . . Borrower Party's liability, if any, for
            the Loan or to seek affirmative relief or damages of any
26         kind or nature from either Lender . . . [except that]
            Borrower Parties have the right . . . to have the . . .
27         Collateral . . . applied in accordance with the Loan
            Documents; and (2) CMR has the right . . . to application
28         by Canyon of the Deposit in accordance with the Loan
            Documents and the Co-Lender Agreement.

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 5 of 26

1  Section 7 of the Pre-Negotiation Agreement provides that "the

2  Borrower Parties" (including CMR) release the Lenders (including

3  Canyon) from

      any and all claims, . . . arising, directly or indirectly,
4     in any manner from and/or out of (i) the Loan, the Loan
      Documents, the Co-Lender Agreement, the Collateral and/or
5     the Property, (ii) either Lender's acts. . . in connection
      therewith, including, . . . the terms and conditions of
6     this [Pre-Negotiation] Agreement, or (iii) any . . .
      transaction or event relating thereto, whether known or
7     unknown, . . . whether now existing or hereafter arising.
      . . provided, however, that the foregoing release shall
8     not apply to the Excluded Claims, any obligations . . . of
      any of the Lender Releasees which arise under this
9     Agreement, or arise on or after the date hereof under the
      Loan, the Loan Documents or the Co-Lender Agreement.

11 **D.  <u>The Complaint</u>**

12     On November 30, 2009, CMR filed the complaint initiating this

13 action.  CMR alleges that, as the Loan approached its maturity date

14 in March 2008 and in the months thereafter, Canyon engaged in a

15 course of commercially unreasonable conduct designed to frustrate

16 CMR's efforts to negotiate a work-out that would preserve the

17 interests of both Canyon and CMR.  Compl., ¶ 20.  CMR alleges that

18 Canyon engaged in this conduct in an effort to eliminate all of

19 CMR's rights in the Loan, the security, the Property, and the

20 project, and to seize for itself CMR's equity in the Property, plus

21 any potential profits from the project.  <u>Id.</u>

22     CMR asserts the following causes of action against Canyon:

23 (1) breach of contract; (2) breach of the covenant of good faith and

24 fair dealing; (3) breach of fiduciary duty; (4) bad faith waste;

25 (5) gross negligence; (6) declaratory relief; (7) equitable

26 subordination; (8) equitable reformation; (9) equitable estoppel;

27 and (10) aiding and abetting breach of fiduciary duty.

28     All of the alleged claims rely upon a common set of underlying

   allegations: failure to service the loan in a commercially

-6-

reasonable manner, failure to protect CMR's interests, improper seizure of the Fill Reserve, failure to negotiate a work out, improper institution of enforcement actions, acceptance of the $1,375,000 paid by CMR without extending the Loan, and differing interpretations regarding the effect of Canyon purchasing the collateral at a foreclosure sale.

On January 5, 2009, Canyon filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted.

**LAW**

**A.  Standard of Review**

A court should dismiss a complaint if it does not set forth factual allegations permitting a plausible conclusion that the plaintiff would be entitled to relief if allowed to proceed beyond the motion to dismiss.  Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007).  Allegations based upon mere possibility, suspicion, or speculation are insufficient.  Rather, the plaintiff must plead specific facts providing a plausible basis to conclude that the essential elements of the asserted claim are met.  Id.

In ruling upon a motion to dismiss, the court may consider the contents of documents referred to the complaint and central to the complaint, if the authenticity of the documents is not contested. Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)).  The court may consider such documents without converting the motion to dismiss into a motion for summary judgment. Knievel v. ESPN, 393 F.3d 1068, 1076-66 (9th Cir. 2005).  Any ambiguity in the documents, however, must be resolved in the

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 7 of 26

1  plaintiff's favor.  <u>Int'l Audiotext Network, Inc. v. AT&T Co.</u>, 62

2  F.3d 69, 72 (2d Cir. 1995); <u>Hearn v. R.J. Reynolds Tobacoo Co.</u>, 279

3  F.Supp. 2d 1096, 1102 (D. Ariz. 2003).

4      If a court dismisses a complaint, leave to amend should be

5  freely given.  Leave to amend should not be granted if amendment

6  would be futile.  <u>Theme Promotions, Inc. v. News Am. Mktng. FSI</u>,

7  546 F.3d 991, 1010 (9th Cir. 2008).

8  **B.  <u>Validity and Scope of Choice-of-Law Clause</u>**

9      A bankruptcy court applies federal common law choice-of-law

10 rules to determine the enforceability of a contractual choice-of-law

11 provision, even when resolution of the underlying dispute turns on

12 state law.  <u>Mandalay Resort Group v. Miller</u>, 292 B.R. 409, 413 (9th

13 Cir. BAP 2003).  Federal common law applies section 187 of the

14 Restatement (Second) Conflicts of Law to determine the

15 enforceability of contractual choice-of-law provisions.[2]

16     Subdivision (1) of the Restatement (Second) of Conflicts

17 provides:

18          The law of the state chosen by the parties to govern
           their contractual rights and duties will be applied if the
19         particular issue is one which the parties could have
           resolved by an explicit provision in their agreement
20         directed to that issue.

21     The comments to section 187 provide that parties may agree to

22 apply the law of a forum to decide all questions regarding the

23 construction and performance of an agreement, but not questions

24 regarding capacity to contract, or other contract-formation issues.

25 <u>Id.</u> cmts. c, d.

26

27

-----

28

      [2] California state courts also apply the principles set forth
   in Restatement (Second) of Conflicts section 187.  <u>Nedlloyd Lines</u>
   <u>B.V. v. Sup. Ct.</u>, 3 Cal. 4th 459, 464-65 (1992).

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 8 of 26

In this action, sophisticated, well-represented parties expressly contracted to apply New York law to all "matters of construction and performance of this Agreement and the obligations arising hereunder." The complaint alleges claims involving matters of construction and performance of the Co-Lender Agreement. The complaint does not allege that any party lacked capacity to contract, or that a binding contract was not formed. Accordingly, the choice-of-law clause is valid under section 187(1). Swanson v. Image Bank, Inc., 206 Ariz. 264, 267 (2003) (interpreting Rstmt. § 187(1)) (enforcing contractual choice of law is particularly appropriate where parties had relatively equal bargaining power, and were both represented by counsel).

Where, as here, the making of a contract is not in dispute, the law chosen by the parties need not have any reasonable relationship to the place of creation or performance of the contract. Such a relationship is necessary under section 187 of the Restatement only where the parties seek to specify choice of law governing issues concerning formation or validity of the contract.[3]

The law to be applied to tort claims is the law of the forum state. Investors Equity Life Ins. Co. of Hawaii, Ltd. v. ADM Investors Svs., Inc., 1 Fed. Appx. 709, 711 (9th Cir. 2001) (citing Sutter Home); Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401 (9th Cir. 1992)("Claims arising in tort are not

---

[3] I decline to follow Nedlloyd's contrary reading of Restatement section 187(1). First, the court's comments regarding section 187(1) were not necessary to the court's decision and are dictum. Second, it is apparent that the Nedlloyd court did not read carefully comments c and d to section 187, indicating why dictum is not binding. Third, state-court decisions regarding Restatement section 187 are not binding, because federal common law governs the enforceability of choice-of-law provisions, even though the underlying claims arise under state law.

-9-

ordinarily controlled by a contractual choice of law provision."); accord Superior Leasing, LLC v. Kaman Aerospace Corp., 2006 WL 3756950 at *8-9 (D. Or. 2006).

**C.** **Analysis of Claims for Relief**

**1.** **First and Second Claims for Relief: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

CMR alleges that Canyon breached both the Co-Lender Agreement and the Credit Agreement by: (i) failing to service and administer the Loan with the care, skill and diligence; (ii) failing to preserve and protect Plaintiff's interest in the Loan and the collateral; (iii) seizing the funds held in the Fill Reserve and applying them to Canyon's Note; (iv) failing to negotiate a work-out of the Loan in good faith; and (v) releasing security and taking enforcement actions without CMR's consent. CMR alleges that Canyon further breached the Co-Lender Agreement and the Credit Agreement by accepting the $1,375,000 fee paid by CMR to extend the Loan, but then contending the maturity date of the Loan was not extended and refusing to return the fee.

**(a)** **Failure to administer the Loan in a commercially reasonable manner**

The complaint contains wholly conclusory allegations regarding Canyon's alleged failure to service the Loan in a commercially reasonable manner. It alleges no facts other than a recitation that Canyon failed to adhere to accepted servicing practices and breached the implied covenant of good faith and faith and fair dealing. Conclusory allegations that merely recite the elements of a claim are insufficient to state a claim upon which relief may be granted. Twombly, 127 S.Ct. at 1965.

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 10 of 26

**(b) Releasing security and taking enforcement action without CMR's consent; failure to preserve CMR's interest in the Loan and in collateral.**

The complaint asserts that Canyon seized the Fill Reserve and commenced foreclosure proceedings without CMR's consent. Specifically, CMR alleges that on August 11, 2008, Canyon, without prior notice to or consent from CMR, seized $6,101,529 from the Fill Reserve and applied it to the A Loan. CMR alleges that this act released collateral that had been given to secure both the A Note and the B Note, and thereby stripped funds that could have been used to keep the monthly Loan payments current until 2009 Id., ¶¶ 27, 28. CMR also alleges that on October 16, 2008, Canyon unilaterally issued a notice of default, and gave notice that it was going to conduct a UCC public foreclosure sale of 100 percent of HK LLC's membership interests. Compl., ¶ 30. As explained below, these alleged acts were expressly permitted by the Co-Lender Agreement, and cannot be the basis for a claim upon which relief may be granted. Twombly, 127 S.Ct. at 1965.

(i) <u>Fill Reserve</u>. Canyon had the right to initiate the foreclosure proceedings and to seize the Fill Reserve and apply it to the A Note without CMR's consent, if Canyon used reasonable efforts to reach an agreement with CMR and could not reach such an agreement within ten days. The complaint acknowledges that Canyon negotiated for more than ten days, and alleges only in the vaguest of terms that Canyon did not use reasonable efforts to reach an agreement. The complaint does not allege that Canyon refused to meet during the 10-day negotiation period. Nor does the complaint allege that CMR proposed a solution during the 10-day period that would have fully protected Canyon's interest, and that Canyon refused to consider the proposal. Absent such allegations, the

-11-

1  complaint does not allege a breach of section 9(a) of the Co-Lender
2  Agreement.

3          (ii) <u>Foreclosure proceedings</u>.  CMR contends that the last
4  sentence of 9(a) of the Co-Lender Agreement permits Canyon to
5  commence an Enforcement Action, only if such action conforms with
6  Accepted Servicing Practices, and only if consultation with B Note
7  Holder suggests that such action is necessary to preserve the
8  collateral CLA, § 9(d).  This interpretation is unreasonable,
9  because it would render other provisions of the Co-Lender Agreement
10 meaningless.

11     In the event of default, CMR has the right to cure within a
12 specified period.  CLA, § 10.  Canyon has the right to commence
13 foreclosure proceedings if the parties are unable, after a ten-day
14 period of negotiation, to agree upon an alternative response to the
15 Event of Default.  <u>Id.</u>, § 9(a).  Canyon has the right to commence an
16 Enforcement Action, without negotiating for ten days, *at any time*
17 Canyon reasonably determines that such action is necessary to
18 preserve the collateral.  <u>Id.</u>

19     The complaint alleges that negotiations continued beyond ten
20 days, and does not allege that the Enforcement Action was brought
21 under the "emergency clause" affording Canyon rights to bring an
22 enforcement action without any negotiations.  Compl. ¶¶ 20, 23.
23 Only if Canyon is acting under the "emergency clause" of section
24 9(a), must Canyon "reasonably determine" that enforcement action is
25 necessary to preserve the collateral.  Applying the "reasonably
26 determines" language to enforcement actions taken by Canyon after
27 ten days of negotiations with CMR conflicts with the first sentence
28 of section 9(a), which entitles CMR to bring an enforcement action
   whether or not the collateral is at risk.

Nor does section (4)(a) (accepted servicing practices) limit Canyon's rights to initiate foreclosure proceedings under sections 9(a) or 9(d), because "accepted servicing practices" is defined to mean "the servicing and administration of the Loan, *in accordance with . . . the terms of this Agreement, . . . and to the extent consistent with the foregoing*. . . ." CLA, § 1(a)(xii). Construing "accepted servicing practices" to require that Canyon obtain CMR's consent to foreclosure conflicts with section (9)(a), which expressly authorizes Canyon to foreclose after ten days of negotiations, and section 9(d), which authorizes Canyon to foreclose any time an Event of Default exists concurrently with an Equity Control Condition.

Because the complaint alleges that Canyon engaged only in conduct that was expressly permitted by the Co-Lender Agreement, the complaint fails to state a claim for breach of section (9), or a claim for breach of the covenant of good faith and fair dealing. Warner Theatre Assoc. L.P. v. Met. Life Ins. Co., 1997 WL 685334 at 6 (S.D.N.Y. 1997); Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F.Supp. 976, 991 (S.D.N.Y. 1989); Collard v. Inc. Village of Flower Hill, 427 N.Y.S.2d 391, 301 (2d Dep't 1980), aff'd, 52 N.Y. 2d 594 (1981).

**(c) Failure to negotiate a work-out in good faith**

CMR fails to state a claim for breach of contract as to loan work-out negotiations occurring on or after May 1, 2008, because Canyon had no contractual or other obligation to enter into a new contract with CMR. Furthermore, the only allegations in the complaint regarding work-out negotiations involve conduct that occurred after May 1, 2008. CMR released all claims regarding the

-13-

work-out negotiations arising after that date. Pre-Negotiation
Agmt., § 5.[4]

**(d) $1,375,000 extension fee**

The complaint fails to state a claim for breach of contract
upon which relief may be granted with respect to CMR's acceptance of
the extension fee and refusal to extend the Loan. The complaint
does not allege that the specific conditions to extend the maturity
date were satisfied. Credit Agmt. § 3.2. Nor do the Co-Lender
Agreement or Credit Agreement condition acceptance of the fee upon
extension of the Loan, or require Canyon to return the fee if it
elects not to extend the Loan. More important, the Pre-Negotiation
Agreement expressly permitted Canyon to accept the fee without
extending the Loan. Recital G. Because Canyon's conduct regarding
the extension fee and refusal to extend the Loan maturity date was
expressly permitted by the Co-Lender Agreement, the Credit
Agreement, and the Pre-Negotiation Agreement, the complaint fails to
state a claim upon which relief may be granted for breach of
contract or breach of the implied covenant of good faith and fair
dealing. <u>Twombley</u>, 127 S.Ct. at 1965; <u>Warner Theatre</u>, 1997 WL
685334 at 6; <u>New Bank of New England</u>, 768 F. Supp. at 1021.

**2. Third Claim for Relief: Breach of Fiduciary Duty**

The complaint alleges that Canyon owed CMR a fiduciary duty in
servicing and enforcing the Loan. CMR alleges that Canyon owed CMR
a separate fiduciary duty to work out an approach satisfactory to
both lenders as the A Loan approached maturity in March 2008.

---

[4] For this reason, the complaint also fails to state a claim
for breach of the implied covenant of good faith and fair dealing
upon which relief may be granted with respect to Canyon's conduct
in the work-out negotiations. <u>Warner Theatre</u>, 1997 WL 685334 at 6;
<u>Hartford Fire Ins.</u>, 723 F.Supp. at 991; <u>Collard</u>, 427 N.Y.S.2d at
301.

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 14 of
26

Compl., ¶ 44. For the following reasons, the complaint fails to state a claim for breach of fiduciary duty.

First, the parties contractually agreed to eliminate liability for breach of fiduciary duty for actions taken in connection with the Co-Lender Agreement and in connection with the administration of the Loan. The Co-Lender Agreement provides as follows:

> Neither A Note Holder nor B Note Holder shall: (i) be liable for any action taken or omitted by it under or in connection with this Agreement or any other Loan Document or the transactions contemplated hereby (except for its own gross negligence or willful misconduct).

CLA, § 4(h).

The Co-Lender Agreement also provides:

> B Note Holder Agrees that A Note Holder owes no fiduciary duty to B Note Holder in connection with the administration of the Loan and the Loan Documents and B Note Holder agrees not to assert any such claim. A Note Holder shall abide by the Loan Documents and the Accepted Servicing Practices. A Note Holder agrees that B Note Holder owes no fiduciary duty or standard of care to A Note Holder in connection with the administration of the Loan and the Loan Documents and A Note Holder agrees not to assert any such claim.

CLA, § 8(a). Unambiguous provisions in commercial agreements that limit the liability of one party to the other are enforceable. New Bank of New England, 768 F.Supp. at 1022; Laclede Inv. Corp. v. Kaiser, 596 S.W.2d 36, 39 (Mo. App. E.D. 1980).

Second, CMR does not allege that Canyon failed to apply the Fill Reserve proceeds in accordance with the Loan Documents or that Canyon absconded with those funds. The complaint alleges the elements of a claim for breach of fiduciary duty only in the most general sense. Such conclusory allegations are insufficient to state a claim upon which relief may be granted.

Third, courts will not impose a fiduciary duty on Canyon to negotiate a workout with CMR, because senior lender Canyon has very different interests from junior lender CMR upon HDC's failure to pay

-15-

the Loan when due.  First Citizens Fed. Savings & Loan Ass'n v.
Worthen Bank & Trust Co., N.A., 919 F.2d 510, 514 (9th Cir. 1990);
New Bank of New England, N.A. v. Toronto-Dominion Bank, 768 F.Supp.
1017, 1021 (S.D.N.Y. 1991) (applying California law).

In its opposition brief, CMR contends that: (1) Canyon was
CMR's agent and agency is a fiduciary relationship; (2) California
law suggests that fiduciary duties cannot be waived; (3) waiver is a
question of fact; and (4) the subsequent relationship between CMR
and Canyon gave rise to a separate fiduciary duty to negotiate a
Loan work out.  These arguments are unpersuasive.

First, even if Canyon was acting as CMR's agent, CMR
contractually waived its claims for breach of fiduciary duty against
Canyon.  See supra, p. 15.

Second, the case cited by CMR to support its argument that
fiduciary duties cannot be waived is easily distinguishable.  In BT-
I v. Equitable Life Ass. Society, 75 Cal. App. 4th 1406 (1999), the
court held that a limited partnership agreement cannot relieve the
general partner of its fiduciary duties in matters fundamentally
related to the partnership business.  Id. at 1412.  The court stated
that a "partnership is a fiduciary relationship, and partners are
held to the standards and duties of a trustee in their dealings with
each other."  Id.  A partnership involves two or more people who
contribute capital or labor with an understanding that they will
proportionately share profits and losses.  (Black's Law Dict., 6th
Ed.)  Canyon and CMR were not partners.  CLA, § 25 ("Nothing
provided hererin is intended to create a joint venture, partnership,
tenancy-in-common or joint tenancy relationship between or among any
of the parties hereto").  Rather, they were a senior lender and a

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 16 of
26

1  junior lender.  As set forth above, courts do not imply a fiduciary
2  relationship between sophisticated commercial co-lenders.

3      Third, interpretation of an unambiguous contract is a question
4  of law.  _Coremetrics, Inc. v. Atomic Park.com, LLC_, 2005 WL 3310093
5  at *3 (N.D. Cal. 2005).  The case cited by CMR to support its
6  argument that waiver is a question of fact is distinguishable.
7  _Bickel v. City of Piedmont_, 16 Cal.4th 1040, 1052 (1997) did not
8  involve interpretation of a contractual waiver provision, but
9  whether a party may waive the protections of a California statute
10 establishing time limits for government approval of development
11 project applications.

12     Fourth, even if a separate fiduciary duty did arise during the
13 attempted work-out, CMR and Canyon expressly waived all claims
14 against each other that might arise during those work-out
15 negotiations.  _See_ _supra_, p. 14.  This waiver is broad, and
16 encompasses CMR's claim for breach of fiduciary duty arising during
17 the work-out negotiations after May 1, 2008.

18     **3.  Fourth Claim for Relief: Bad Faith Waste**

19     The complaint alleges that by seizing the Fill Reserve and
20 applying it to pay down the A Note, Canyon committed waste and
21 impaired CMR's security for repayment of the B Note.  Compl., ¶ 50.
22 The complaint further alleges that Canyon deprived CMR of a source
23 of funds that could have been used to keep monthly payments on the
24 Loan current.  _Id._

25     Under California law, "waste" is defined as the destruction,
26 misuse, alteration, or neglect of real property by a person who is
27 in lawful possession to the injury of the interest (or estate) of
28 another in the property.  4 Miller & Starr, Cal. Real Estate, Deeds
   of Trust, § 10.53 (citing Cal. Civ. Code §§ 1714(a), 2929).  "Bad

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 17 of
26

faith" waste must be caused by the reckless, intentional or malicious injury to the property. Id. at § 10:216; Cornelison v. Kornbluth, 15 Cal.3d 590, 604-05 (1975).

Citing Nippon Credit Bank v. 1333 North Cal. Blvd., 86 Cal. App. 4th 486 (2001), CMR contends that when conduct impairs security held for repayment of a loan, a claim for bad faith waste will lie. Nippon held that a trustor's intentional non-payment of property taxes can constitute bad faith waste. Id. at 493-99. The theory underlying such claim is that a mortgagee is entitled to have his mortgage security unimpaired by acts of the mortgagor. Id. at 494; Syracuse Sav. Bank v. Onondaga Silk Co., 14 N.Y.S.2d 356, 359 (1939).

The seizure of the Fill Reserve did not constitute actionable waste for two reasons. First, it did not impair the collateral in any meaningful way. Both A Note and B Note were secured by the Fill Reserve, by the Property, and by HDC's interest in HK LLC. When Canyon applied the Fill Reserve to pay down the balance due on the A Note, the real value of CMR's security interest in the land and the LLC was increased by a like amount. Second, Canyon's seizure and application of the Fill Reserve was expressly permitted under section 9 of the Co-Lender Agreement. Canyon's seizure of the Fill Reserve represented a contractually permitted application of collateral to pay senior debt, not an actionable waste of collateral.

### 4. Fifth Claim for Relief: Gross Negligence

The complaint alleges that Canyon, as the agent for CMR in servicing and administering the Loan, had a duty not to take any action that would unreasonably harm CMR's interest in the Loan and security for the Loan. Compl., ¶ 54. The complaint alleges that

-18-

Canyon's acts were grossly negligent, causing CMR to expend time and money attempting to negotiate a work-out and putting CMR's interest in the Loan and the security for the Loan at unreasonable risk of loss. Id., ¶ 55. The complaint alleges that Canyon's servicing of the Loan fell significantly below any reasonable standard of care for prudent loan servicing. Id.

The complaint fails to state a gross negligence claim under California law because it does not allege that Canyon's conduct exhibited an extreme departure from a duty of care. Carter v. Baldwin, 2009 WL 143691 (unreported); City of Santa Barbara v. Sup. Ct., 41 Cal. 4th 747, 754 (Cal. 2007). More important, the complaint does not allege a breach that is distinct from or in addition to the breach of contract. A breach of contract is not considered a tort unless a legal duty independent of the contract itself has been violated. Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 1092 (1995). The allegations that Canyon caused CMR to expend time and money to negotiate a work-out, and put CMR's interest in the Loan and related security therefor at unreasonable risk of loss spring directly from the "accepted servicing practices" provision in the Co-Lender Agreement, and thus do not allege breach of an independent duty sufficient to support a tort claim for gross negligence. Compl. ¶¶ 15, 54.

**5. Sixth Claim for Relief: Declaratory Relief**

Canyon contends that, under section 9(b) of the Co-Lender Agreement, CMR will lose all of its rights in the Loan and recover nothing in payment of the B Note if Canyon is the winning bidder at a foreclosure sale. Compl., ¶ 58. CMR disputes this contention, and contends that the Co-Lender Agreement should not be read to divest CMR of any rights to collect the sums due on the Loan and the

Case: 08-03148    Doc# 38    Filed: 05/08/09    Entered: 05/08/09 16:07:58    Page 19 of 26

rights to security provided for the Loan if Canyon is the winning bidder at a foreclosure sale. _Id._ CMR seeks a judicial determination of the parties' rights under section 9(b) of the Co-Lender Agreement. _Id._

The most straightforward, natural reading of the language of section 9 of the Co-Lender Agreement is as follows. If HDC defaults on the A Note, and that default is not cured, CMR has three possible remedies to secure repayment of the B Note. First, CMR can take title to the Property. CLA, § 9(b)(i). Second, CMR can purchase the A Note from Canyon. _Id._, § 9(b)(ii). Third, CMR is entitled to its share of the proceeds of any foreclosure sale. _Id._, § 9(b)(last sentence). Canyon is required to credit bid the full balance of the A Note at any foreclosure sale, but it not required to make a bid in excess of that amount. _Id._, § 9(a). CMR is entitled to the amount paid by any bidder in excess of the amount necessary to pay the A Note. _Id._, § 9(b)(last sentence). CMR has no right to conduct a foreclosure sale itself. _Id._, § 9(a).

CMR's argument that it retains an interest in the collateral after a foreclosure sale conducted by Canyon is foreclosed by the plain language of the contract. Section 9(b) provides:

> If . . . A Note Holder is the winning bidder at any foreclosure sale, then transfer of title to Premises or the Pledged Interests shall be in the name of A Note Holder or its designee and (i) B Note Holder shall have no further rights or interests in the Loan; (ii) all subsequent Loan Recoveries shall belong to A Note Holder; and (iii) except for the indemnification obligations of B Note Holder and A Note Holder, this Agreement shall terminate. The foregoing shall not affect B Note Holder's share . . . of any net proceeds received in connection with any foreclosure sale of the Premises or Pledged Interests in which a third party is the winning bidder.

CMR does not allege any discussions in which the parties agreed either in writing or orally that the contractual language cited

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 20 of 26

above would be interpreted to mean that CMR did retain an interest in the Loan and collateral after a foreclosure sale. Nor would such evidence be effective, as the contractual language quoted above is not reasonably susceptible to the reading urged by CMR. <u>Ntl. Abatement Corp. v. Ntl. Union Fire Ins. Co. of Pittsburgh</u>, 824 N.Y.S. 2d 230, 232 (2006); <u>Am. Home Assur. Co. v. McDonald</u>, 698 N.Y.S.2d 436 (1999).

Nor does the language of section 9(b) work some legally disfavored forfeiture. CMR does not dispute that it agreed to take a position junior to that of Canyon. CMR's rights under the Co-Lender Agreement are very much like those of any junior secured lender, except that CMR expressly gave up the right to conduct its own foreclosure sale. A junior secured creditor always runs the risk that a foreclosure sale will not yield a bid sufficient to pay the junior creditor as well as the senior, and the junior lender loses all rights in the collateral if the senior lender purchases with a bid that does not exceed the amount of its note. CMR is at some disadvantage versus the typical junior secured lender in that it cannot take title through its own foreclosure sale, and then file bankruptcy to hold off a foreclosure by the senior lender while it tries to arrange a consensual sale. But where Canyon is required to put the collateral up for public sale, this marginal disadvantage is not a forfeiture that renders section 9(b) unenforceable.

**6.    Seventh Claim for Relief: Equitable Subordination**

CMR alleges that Canyon undertook actions during the life the Loan that were designed to give Canyon an unfair advantage, and prevented CMR from negotiating a work-out that would protect the rights of both CMR and Canyon. Compl., ¶ 63. CMR vaguely asserts that Canyon has engaged in a course of inequitable conduct designed

1  to confer a benefit on Canyon and to eliminate CMR's interest in the
2  Loan and the collateral used to secure the Loan.  Id., ¶ 64.

3      The equitable subordination of a claim generally requires three
4  findings:

5          that the claimant engaged in some type of inequitable
           conduct, (2) that the misconduct injured creditors or
6          conferred an unfair advantage on the claimant, and (3)
           that subordination would not be inconsistent with the
7          Bankruptcy Code.

8  In re First Alliance Mortg. Co., 471 F.3d 977, 1006 (9th Cir. 2006).
9  If the claim is against a non-insider, non-fiduciary, "the level of
10 pleading and proof is elevated: gross and egregious conduct will be
11 required before a court will equitably subordinate a claim."  Id.

12     The allegations in this claim for relief are inadequate for
13 three reasons.  First, they rely upon Canyon's conduct in proceeding
14 with foreclosure, seizing and applying the Fill Reserve, and
15 contending that a foreclosure sale will wipe out CMR's interest in
16 the collateral.  As explained above, these acts cannot be
17 inequitable because they are expressly authorized by the Credit
18 Agreement and the Co-Lender Agreement.  Second, CMR's allegations
19 regarding the work-out would require this court in substance to
20 determine that Canyon unreasonably refused to make a contract.
21 CMR's own version of the facts indicates that Canyon negotiated with
22 CMR over a nine-week period.  Compl., ¶¶ 21, 23.  There was no
23 failure to negotiate; there was a failure to agree.  Third, the
24 remaining allegations are wholly conclusory and do no more than
25 recite the elements of equitable subordination.

26     **7.   Eighth Claim for Relief: Equitable Reformation**

27     CMR asserts that the Co-Lender Agreement should be reformed due
28 to CMR's unilateral mistake.  The complaint alleges in substance
   that CMR and Canyon orally agreed that CMR would have priority over

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 22 of 26

Canyon in the distribution of proceeds from any consensual sale or foreclosure sale to a third party, but did not orally agree that if Canyon were the successful bidder at a foreclosure sale, CMR would lose all interest in the Loan and collateral. Compl., ¶ 67. CMR alleges that the Co-Lender Agreement diverges from the parties' oral agreement by providing that CMR's interest in the Loan and collateral terminates if Canyon is the successful bidder at a foreclosure sale. Id. CMR alleges that it mistakenly believed that section 9(b) correctly expressed the terms of the oral agreement, and that Canyon knew of CMR's mistake at the time execution of the Co-Lender Agreement. Id., ¶¶ 68-69. To reflect the true intent of the parties, CMR asserts that the Co-Lender Agreement should be reformed to provide that if Canyon is the successful bidder at a foreclosure sale, CMR's rights in the Loan, Note, and any remaining security for the Loan are not terminated. Id.

When one party to a contract is mistaken as to a contractual provision, and the party's mistake is known or suspected by the other, the contract may be reformed to express the single intention entertained by both parties.

The complaint does not allege facts sufficient to state a claim for reformation of section 9(b). The complaint alleges that the parties orally agreed that Canyon would be entitled to priority of payment, and that the parties did not expressly agree that CMR's interest in the Loan would be eliminated if Canyon purchased at a foreclosure sale. The complaint does not allege that the parties specifically agreed that CMR's interest would *not* be eliminated if Canyon purchased at a foreclosure sale. These allegations are inadequate to state a claim that CMR was the victim of a "mistake" regarding section 9(b). First, the provisions of section 9(b) are

not inconsistent with the alleged oral agreement. Section 9(b) merely specifies in detail how Canyon's payment priority will be implemented. Second, and more important, CMR claims to be the victim of mistake regarding a very clear term in a written contract that CMR signed. CMR does not dispute that it is a sophisticated lender, and that it was represented by counsel in this very large and very carefully documented business deal. There may be circumstances in which a party of this sophistication could be the victim of mistake with respect to a written contract that is so clear, but the complaint does not a plausible scenario of such mistake.

**8. Ninth Claim for Relief: Equitable Estoppel**

The essential elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) the party must intend that its conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party must rely upon the other's conduct to its injury. <u>Grodensky v. Artichoke Joe's Casino</u>, 171 Cal. App. 4th 1399 (2009).

The complaint alleges that Canyon should be estopped from claiming that CMR's rights and interest in the Loan and the security will be terminated as a result of any foreclosure sale of security held by Canyon. Compl., ¶ 72. CMR alleges that Canyon knew it was not going to service the Loan to preserve the collateral for the benefit of CMR; that Canyon knew it would not engage in reasonable negotiations for a Loan work-out; that Canyon intended that CMR rely on Canyon's promises; that CMR did rely relied upon Canyon's promises; and that CMR was ignorant of the true facts. <u>Id.</u>, ¶ 71.

Taken as true for purposes of the motion to dismiss, the allegations fail to state a claim for equitable estoppel upon which relief may be granted. The Co-Lender Agreement specifically provides that CMR's interest in the Loan terminates under certain conditions. § 9(b). Canyon had no duty to execute a new contract with CMR following the work-out negotiations. In addition, the complaint is devoid of a single specific allegation regarding how Canyon failed to service the Loan in a commercially unreasonable manner, other than actions expressly permitted by the Co-Lender Agreement.

**9.  Twelfth Claim for Relief: Aiding and Abetting Breach of Fiduciary Duty**

In a separate memorandum decision entered concurrently herewith, the court has determined that CMR failed to state a claim against SCD Kunia and Stanford Carr for breach of fiduciary duty. Accordingly, CMR's claim for aiding and abetting Canyon's breach of fiduciary necessarily fails to state a claim upon which relief may be granted. <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574-75 (2005).

**\*\*END OF MEMORANDUM DECISION\*\***

```
 1                    Court Service List

 2

 3  Michael D. Cooper, Esq.
    Wendel, Rosen, Black and Dean
 4  1111 Broadway, 24th Floor
    P.O. Box 2047
 5  Oakland, CA 94604-2047

 6  Richard J. Grad, Esq.
    Jeremy Rosenthal, Esq.
 7  Sidley, Austin, Brown and Wood
    555 W 5th St.
 8  Los Angeles, CA 90013-1010

 9  Ryan Sandrock, Esq.
    Robert B. Martin III, Esq.
10  Sidley Austin LLP
    555 California St. #2000
11  San Francisco, CA 94104

12  Douglas R. Young, Esq.
    Richard Van Duzer, Esq.
13  Rachael Turner, Esq.
    Tyler Gerking, Esq.
14  Farella, Braun and Martel
    235 Montgomery St.
15  San Francisco, CA 94104

16

17

18

19

20

21

22

23

24

25

26

27

28
```

Case: 08-03148   Doc# 38   Filed: 05/08/09   Entered: 05/08/09 16:07:58   Page 26 of
26