

**Signed and Filed: May 08, 2009**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 08-32220 TEC |
| CMR MORTGAGE FUND, LLC, a California limited liability company, | Chapter 11 |
| Debtor. | |
| CMR MORTGAGE FUND, LLC, a California limited liability company, | Adv. Proc. No. 08-3148-TC |
| Plaintiff, | |
| vs. | |
| CANPARTNERS REALTY HOLDING COMPANY IV LLC, a Delaware limited liability company; SCD KUNIA, LLC, a Hawaii limited liability company; and STANFORD CARR, an individual, and DOES 1 through 20, inclusive, | |
| Defendants. | |

**MEMORANDUM DECISION RE SCD KUNIA, LLC AND STANFORD CARR'S
MOTION TO DISMISS**

-1-

For the following reasons, I grant SCD Kunia LLC and Stanford Carr's Motion to Dismiss in its entirety with leave to amend. Hawaii law governs resolution of this dispute.

**FACTS**

This dispute arises out of a $97,000,000 loan made in 2007 to Halekua Development Corporation ("HDC") by Canpartners Realty Holding Co. IV LLC ("Canyon") and CMR Mortgage Fund, LLC ("CMR") to fund HDC's acquisition and development of Hawaiian real property (the Property). Compl., ¶ 12. As part of the loan transaction, the co-lenders hired Stanford Carr ("Carr") and his company, SCD Kunia, LLC ("SCD")[1] to provide management services for development of the Property, including obtaining land use entitlements and state and local government approvals related to the project. Id., ¶ 17. The parties entered into the following contracts.

**A.   The Management Agreement**

In March 2007, HDC and SCD entered into a Project Management Agreement ("Management Agreement"). The Management Agreement required SCD to work collaboratively with HDC "to advance the pre-construction development process." Mgmt. Agmt., § 1.8. Under the Management Agreement, HDC appointed SCD as its attorney-in-fact for the purpose of executing, delivering, and recording all instruments and documents "deemed necessary or appropriate by Manager in order to advance the Project. . . ." and other like tasks. Mgmt. Agmt., § 1.11(n). The Management Agreement provides that SCD shall at no time hold itself out as an agent for HDC, and shall have no authority to bind HDC or the project to any obligation, except as

---

[1] SDC is a Hawaii limited liability company. Compl., ¶ 8. Stanford Carr is an individual who resides in Hawaii. Id., ¶ 9.

expressly provided in the Management Agreement. Id., § 1.5. The Management Agreement provides that SCD

> shall have no authority . . . to. . . [e]xecute any contract or incur any obligation on behalf of [HDC] or for the benefit of the Project, other than those contracts with governmental authorities necessary or appropriate for the development of the Project and those contracts with consultants and others providing products or services . . . contemplated by the applicable Budget. . . .

Id., § 1.15(c). The Management Agreement provides that there shall be no third-party beneficiaries of the Agreement, "or otherwise give rise to any cause of action in any person not a party hereto." Id., § 6.10. The Management Agreement contains a Hawaii choice-of-law clause, and provides that claims arising out of the Agreement shall be resolved by arbitration. Id., §§ 6.8, 6.13. Schedule A to the Management Agreement specifies the milestones SCD is responsible for achieving. Schedule B specifies 41 pre-construction development tasks for which SCD is responsible.

**B.   Option Agreement**

On March 9, 2007, Carr and SCD entered into an Option Agreement with HDC. The Option Agreement grants SCD "exclusive and irrevocable options" to purchase a portion of the residential super-pads ("Super-Pads") created by HDC on the Property for further development into residential units. § 1. SCD was granted options to purchase 25 percent of the Super-Pads "for a price equal to the then current 'market rate' for such Super-Pad at the time of the exercise of such options" and 25 percent of the Super-Pads at a "price equal to ninety percent of the then-current 'market rate' for each Super-Pad at the time of the exercise of such options." Id. The Option Agreement contains a Hawaii choice-of-law clause, and a mandatory arbitration provision. Id., §§ 18, 23.

**C. <u>Assignment and Subordination of Project Management Agreement</u>**

On March 12, 2007, HDC, SCD, Canyon, and CMR entered into an Assignment and Subordination of Project Management Agreement ("Assignment"), pursuant to which HDC assigned the Management Agreement to Canyon and CMR as additional security for the Loan. Assignment Agmt., § 1. In the Assignment, SCD agreed to perform all of its obligations under the Management Agreement. <u>Id.</u> The Assignment Agreement provides as follows.

> Neither this Agreement nor any action or actions on the part of Lender shall constitute an assumption by Lender of any of Borrower's obligations under the Project Management Agreement unless and until Lender shall have given *written notice* to Manager of its election to exercise the rights of Borrower under the Project Management Agreement following an Event of Default. *Thereafter*, Lender shall have the *rights, obligations,* privileges and rights of election as provided in the Project Management Agreement. Prior to such notice, (i) Borrower shall continue to be liable for all of its obligations under the Project Management Agreement and . . . (ii) Manager shall continue to fulfill its obligations to Borrower under the terms of the Project Management Agreement.

<u>Id.</u> (emphasis added).

The Assignment Agreement further provides that "from and after" Lender's succession to the interests of HDC under the Project Management Agreement, Lender "shall have the same remedies against Manager for the breach of any provision contained in the Project Management Agreement. . . ." <u>Id.</u>, § 9. As long as HDC is not in default under the Loan Documents or the Project Management Agreement, HDC "shall be entitled to all of its rights under the Project Management Agreement, except to the degree such rights conflict with [HDC]'s obligations pursuant to the Loan Documents or this Agreement." <u>Id.</u>, § 11.

The Assignment Agreement provides that it is

>     for security purposes only.  Accordingly, Lender shall
>     have no right under this Agreement to enforce the
>     provisions of the Project Management Agreement until
>     Borrower shall be in default under its obligations to
>     Lender under this Agreement or any of the other Loan
>     Documents or until Manager fails to perform its
>     obligations under this Agreement or the Project Management
>     Agreement. . . .  Upon the occurrence of any Event of
>     Default, Lender may . . . exercise its rights under this
>     Agreement or the Management Agreement as Borrower's
>     attorney-in-fact. . . and in addition Lender shall have .
>     . . any and all rights and remedies of a secured party. .
>     . .

Id., § 15.  With respect to the Management Agreement, Event of Default is defined as a default that continues more than ten days after written notice thereof from the Project Manager.  Credit Agmt., § 12.1.10.[2]

The Assignment Agreement is governed by Hawaii law, and contains a waiver by each party thereto of the right to jury trial. §§ 23, 28.

**D.   The Complaint**

On November 30, 2009, CMR filed the complaint initiating this action.  CMR asserts a breach of contract claim solely against SCD. In addition, CMR asserts two causes of action against both Defendants for breach of fiduciary duty and aiding and abetting Canyon's alleged breach of fiduciary duty.

On January 5, 2009, SCD and Carr filed their Motion to Dismiss the complaint for failure to state any claims upon which relief can be granted.

---

[2] The Assignment Agreement provides that capitalized terms not defined therein shall have the meaning assigned to such terms in the Credit Agreement. Preamble, p. 1.

# LAW

## A. Standard of Review

A court should dismiss a complaint if it does not set forth specific factual allegations permitting a plausible conclusion that the plaintiff would be entitled to relief if allowed to proceed beyond the motion to dismiss. Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007). Allegations based upon mere possibility, suspicion, or speculation are insufficient. Rather, the plaintiff must plead specific facts providing a plausible basis to conclude that the essential elements of the asserted claim are met. Id.

In ruling upon a motion to dismiss, the court may consider the contents of documents referred to the complaint and central to the complaint, if the authenticity of the documents is not contested. Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)). The court may consider such documents without converting the motion to dismiss into a motion for summary judgment. Knievel v. ESPN, 393 F.3d 1068, 1076-66 (9th Cir. 2005). Any ambiguity in the documents, however, must be resolved in the plaintiff's favor. Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995); Hearn v. R.J. Reynolds Tobacoo Co., 279 F.Supp. 2d 1096, 1102 (D. Ariz. 2003).

If a court dismisses a complaint, a party may amend its complaint with the court's leave, and leave shall be freely given where "justice so requires". Leave to amend will not be granted if amendment would be futile. Theme Promotions, Inc. v. News Am. Mkting. FSI, 546 F.3d 991, 1010 (9th Cir. 2008).

B.  **Analysis of Claims for Relief**

   1.  **Tenth Claim for Relief: Breach of Contract (SCD only)**

Under the Management Agreement, SCD was required, *inter alia*, to work collaboratively with HDC to "advance the pre-construction development process" and "to perform its services with care, skill, and diligence," in accordance with the applicable professional standards currently recognized by persons in the State of Hawaii performing the same or similar service. Compl., ¶ 74; Mgmt. Agmt., §§ 1.8, 4.1(d). CMR alleges that SCD breached the Management Agreement and the Assignment Agreement by engaging in conduct that chilled the market for potential investors in the project, by telling potential investors that the Super-Pads would have a fair market value that was less than the cost to build out the remaining infrastructure and pay off the existing debt. Compl., ¶ 75. CMR alleges that SCD's estimates of value for the cost were intentionally, knowingly, and falsely substantially lower than the true values as a means of chilling any investors from working with CMR to protect the value of its note. Id. CMR alleges that SCD's conduct caused potential investors, such as DIVCO West, which had been willing to invest $40,000,000 in the project, to refuse to invest in the project or buy the property, thus depriving CMR of a means of obtaining funds to pay off the Loan. Id.

CMR has not alleged facts that would entitle it to assert a breach of contract claim against SCD. CMR is neither a signatory to the Management Agreement nor a third-party beneficiary thereof. The Management Agreement provides that there shall be no third-party beneficiaries of the Agreement, "or otherwise give rise to any cause of action in any person not a party hereto." Mgmt. Agmt.,§ 6.10. Although the Assignment Agreement provides for a present assignment

of HDC's rights under the Management Agreement, it also provides that CMR is only entitled to assert those rights after CMR gives written notice to SCD of its election to assert SCD's rights in the Management Agreement following an event of default.  Assignment Agmt., § 1; accord id., § 9 (CMR entitled to assert HDC's rights under the Assignment Agreement after CMR or Canyon's succession to HDC's interest therein).  The complaint does not allege that CMR or Canyon gave written notice to SCD of Lender's election to exercise HDC's rights under the Management Agreement or that an Event of Default continue more than ten days after written notice from SCD.  Accordingly, the complaint fails to state a claim for breach of contract upon which relief may be granted.

**2.  Eleventh Claim for Relief: Breach of Fiduciary Duty**

CMR alleges that, as an agent of HDC, SCD and Carr owed a fiduciary duty not only to HDC, but also to CMR by virtue of CMR's interest in the Management Agreement.  Compl., ¶ 78.  CMR alleges that SCD breached its fiduciary duty by engaging in conduct that chilled the market for potential investors in the Project and deprived the Project of funds for development by telling potential investors that the Super-Pads would have a fair market value that was less than the cost to build out the remaining infrastructure and pay off the existing debt.  Id.  The complaint alleges that "Carr's estimates of value for the lots were intentionally, knowingly and falsely substantially lower than the true values as a means of chilling any investors from working with . . . Plaintiff to project the value of its note."  Id.  CMR also alleges that both SCD and Carr had a conflict of interest arising out of the Option on the Super-Pads, because it was in their interest to dissuade potential investors and preserve their option on 50 percent of the Super-Pads.

Id., ¶ 79. CMR alleges that SCD and Carr "engaged in conduct" that was designed to promote their own financial interests to the detriment of CMR's rights and interests. Id.

CMR fails to state a claim for breach of fiduciary duty upon which relief can be granted.

First, neither SCD nor Stanford Carr is an agent for CMR. Although SCD is an attorney in fact for HDC under the Management Agreement, CMR is not a party to that Agreement nor in privity with HDC. CMR cannot state a claim as a third-party beneficiary, because the Agreement specifically provides that none of its provisions shall inure to the benefit of third parties. Mgmt. Agmt., § 6.10; accord Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 944 P.2d 97, 106 (Haw. Ct. App. 1997) (contract must have been intended to benefit the third party, who must be something more than an incidental beneficiary). The complaint does not allege that CMR or Canyon gave written notice to SCD of Lender's election to exercise HDC's rights under the Management Agreement, such that CMR can assert HDC's rights.

Second, the complaint bases the claim for breach of fiduciary duty on the fact that SCD was HDC's agent. Opp. to Motion to Dismiss at 10. The Management Agreement granted SCD limited agency powers to engage in specific tasks necessary to advance the pre-construction development process. It did not grant SCD any power to bind HDC for purposes other than those expressly permitted by the Management Agreement. Mgmt. Agmt., §§ 1.5; 1.11(n), 1.15(c). Thus, even if CMR could assert HDC's rights under the Management Agreement, the alleged statements fall outside the scope of SCD's agency. Rstmt. (Third) of Agency § 3.01 (actual authority is created by the principal's assent that the agent take the action on

the principal's behalf). Because the basis of the claim for breach of fiduciary duty is SCD's asserted status as an agent for HDC, the complaint fails to state a claim upon which relief may be granted.

Third, CMR has not alleged a claim for breach of fiduciary duty based on SCD and Carr's alleged conflict of interest created by the Option Agreement. An agent may have a financial interest in the subject of the representation as long as the principal consents thereto after disclosure of material facts, and the agent acts in good faith. Rstmt. (Third) of Agency § 8.06. Here, CMR consented to the Option Agreement. The Management Agreement expressly provides that SCD's compensation includes "options to acquire development pads" as set forth in the "Option Agreement attached hereto as Exhibit A, which shall be executed concurrently herewith." Mgmt. Agmt. § 2.3. The Management Agreement further provides that the Option Agreement is "an essential inducement" for SCD to enter into the Management Agreement. Id. HDC and SCD assigned the Management Agreement to CMR, and CMR accepted the assignment as additional security for the Loan. Assignment Agmt., § 1(a). The complaint does not allege that SCD did not act in good faith in obtaining CMR's consent to the Option Agreement, or that SCD did not disclose material facts known at the time by SCD. Accordingly, CMR has failed to state a claim for breach of fiduciary duty based on the alleged conflict of interest created by the Option Agreement.

**3. Claims Based on Intentionally False Statements**

The complaint alleges that SCD and Stanford Carr made intentionally false statements regarding the estimated future value of the Property, and that such statements were made with the purpose of chilling any investors "from working with [CMR] to protect the value of its note." Compl. ¶ 78. False representations are a type

of fraud. <u>TSA Intern. Ltd. v. Shimizu Corp.</u>, 990 P.2d 713, 725 (1999). Accordingly, any claim based on these statements is subject to the heightened pleading standard of FRCP 9(b). <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103-06 (9th Cir. 2003). To satisfy this heightened standard, the complaint must allege the "who, what, when, where, and how" of the misconduct charged, and why the value estimates were misleading. <u>Id.</u> at 1106. The complaint fails to identify when and where the alleged statements were made, whether they were made orally or in writing, and why the value estimates were misleading. Furthermore, to the extent the statements related solely to future facts, and not to past or existing facts, they are not actionable under Hawaii law as false representations. <u>TSA Intern.</u> at <u>id.</u> ("fraud cannot be predicated on . . .unfulfilled predictions or expectations, or erroneous conjectures as to future events."). Because the breach of fiduciary duty claim does not satisfy the heightened pleading standard of fraud, and because it fails to allege misrepresentations of past or existing fact, the complaint fails to state a misrepresentation claim upon which relief may be granted. <u>Vess</u>, 317 F.3d at 1107 ("A motion to dismiss a . . . claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim."); <u>TSA Intern.</u>, 990 P.2d at 725.

### 4. Twelfth Claim for Relief: Aiding and Abetting Breach of Fiduciary Duty

CMR alleges that SCD and Carr sought to aid and assist Canyon in its attempts to seize control over the Property and to eliminate CMR's interest in the Loan. Complaint, ¶ 83. Because the court has determined that CMR failed to state a claim against Canyon for

-11-
Case: 08-03148    Doc# 39    Filed: 05/08/09    Entered: 05/08/09 16:17:41    Page 11 of 13

breach of fiduciary duty, CMR's claim for aiding and abetting Canyon's breach of fiduciary necessarily fails to state a claim upon which relief can be granted. <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574-75 (2005).

**\*\*END OF MEMORANDUM DECISION\*\***

**Court Service List**

Michael D. Cooper, Esq.
Wendel, Rosen, Black and Dean
1111 Broadway, 24th Floor
P.O. Box 2047
Oakland, CA 94604-2047

Richard J. Grad, Esq.
Jeremy Rosenthal, Esq.
Sidley, Austin, Brown and Wood
555 W 5th St.
Los Angeles, CA 90013-1010

Ryan Sandrock, Esq.
Robert B. Martin III, Esq.
Sidley Austin LLP
555 California St. #2000
San Francisco, CA 94104

Douglas R. Young, Esq.
Richard Van Duzer, Esq.
Rachael Turner, Esq.
Tyler Gerking, Esq.
Farella, Braun and Martel
235 Montgomery St.
San Francisco, CA 94104